1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA


PHILLIP ROSENBLUM,       ) 1:11-cv-00766-LJO-SKO-HC
                          )
          Petitioner,   ) FINDINGS AND RECOMMENDATIONS TO
                          ) DISMISS WITHOUT LEAVE TO AMEND
                          ) THE PETITION FOR WRIT OF HABEAS
   v.                  ) CORPUS FOR FAILURE TO STATE A
                          ) COGNIZABLE CLAIM PURSUANT TO 28
JAMES YATES,         ) U.S.C. § 2254 (DOC. 1)
                          )
          Respondent.   ) FINDINGS AND RECOMMENDATIONS TO
                          ) DECLINE TO ISSUE A CERTIFICATE OF
_____) APPEALABILITY AND TO DIRECT THE
                             CLERK TO CLOSE THE CASE


     Petitioner is a state prisoner proceeding pro se and in forma pauperis with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The matter has been referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and Local Rules 302 and 304.  Pending before the Court is the petition, which was filed on May 11, 2011.

     I.   <u>Screening the Petition and Considering the Petition on the Merits</u>

     Rule 4 of the Rules Governing § 2254 Cases in the United States District Courts (Habeas Rules) requires the Court to make a preliminary review of each petition for writ of habeas corpus.

The Court must summarily dismiss a petition "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court...." Habeas Rule 4; O'Bremski v. Maass, 915 F.2d 418, 420 (9th Cir. 1990); see also Hendricks v. Vasquez, 908 F.2d 490 (9th Cir. 1990). Habeas Rule 2(c) requires that a petition 1) specify all grounds of relief available to the Petitioner; 2) state the facts supporting each ground; and 3) state the relief requested. Notice pleading is not sufficient; rather, the petition must state facts that point to a real possibility of constitutional error. Rule 4, Advisory Committee Notes, 1976 Adoption; O'Bremski v. Maass, 915 F.2d at 420 (quoting Blackledge v. Allison, 431 U.S. 63, 75 n. 7 (1977)). Allegations in a petition that are vague, conclusory, or palpably incredible are subject to summary dismissal. Hendricks v. Vasquez, 908 F.2d 490, 491 (9th Cir. 1990).

Further, the Court may dismiss a petition for writ of habeas corpus either on its own motion under Habeas Rule 4, pursuant to the respondent's motion to dismiss, or after an answer to the petition has been filed. Advisory Committee Notes to Habeas Rule 8, 1976 Adoption; see, Herbst v. Cook, 260 F.3d 1039, 1042-43 (9th Cir. 2001).

II.   Failure to State a Cognizable Due Process Claim

A.   Background

Petitioner alleges that on August 7, 2008, while he was an inmate of the Pleasant Valley State Prison, he attempted to suggest a voluntary cell change based on problems he had experienced with his relatively new cellmate, Anglin, and his

expectation of imminent physical conflict with Anglin.
Petitioner reported the difficulties to Correctional Officer
Barraza.  Petitioner was moved, but his new cellmate, Larrimore,
was also incompatible, so Petitioner informed prison staff, and
Petitioner was sent to Sergeant Duty to discuss the matter.
Petitioner informed Sgt. Duty that his difficulties with his
former cellmate had resolved sufficiently to permit Petitioner to
move back to his former cell, although Petitioner hoped Anglin
would still be moved out.  Petitioner asked Duty to reverse the
"bed move."  (Pet. 21, 19-21.)

Petitioner was charged with manipulation of staff on the
ground that Petitioner had been involved in numerous physical
altercations on the A-Yard and was using his past behavior to
manipulate staff into moving his cellmate; it was only when
Petitioner was moved from the first cell that he informed staff
that Petitioner's issue with the old cellmate was not serious and
could have been addressed later on the weekend.  (Pet. 21-22.)

The Court has reviewed the petition, which includes
apparently complete documentation of the pertinent disciplinary
proceedings.  The documentation reflects the rules violation
report of Correctional Sergeant J. J. Duty dated August 12, 2008,
which alleged Petitioner's attempt on August 7, 2008, to
manipulate staff in moving Petitioner's initial cellmate, Anglin.
(Pet. 38.)  A copy of the report was given to Petitioner on
August 18, 2008.  (Pet. 35, 40.)  A staff report of August 18,
2008, reflects that Petitioner was not assigned a staff assistant
or an investigative employee because Petitioner did not meet the
criteria.  (Pet. 37.)  Petitioner requested that Anglin, his

initial cellmate, and another witness identified by number

testify; however, there is no indication that he requested other

witnesses. (Id.)

The report of Lieutenant N. Greene, Senior Hearing Officer

(SHO), reflects that the disciplinary hearing was held on August

20, 2008. (Pet. 38-42.) The report states that Petitioner

requested Correctional Officer Barraza and inmate Anglin as

witnesses. (Pet. 40.) Petitioner did not request any other

evidence. (Id.) Petitioner stipulated to the testimony of

Officer Barraza, who was unavailable for the hearing. The

stipulated testimony was that on the day of the episode, Barraza

had spoken only with Petitioner and his cellmate about the

incompatibility, and Anglin was moved to another cell. Anglin

was asked if he wanted to live with Petitioner. Anglin replied,

"I was cool, he wasn't, he came up with the idea and I told him

to go ahead with it." (Id.) When asked if he and Petitioner had

almost engaged in a fight, Anglin said, "yes and no, just

arguing." Anglin confirmed that after Petitioner spoke with the

officer, Anglin and Petitioner were not trying to work out their

problems. (Pet. 40.)

The hearing officer determined that the preponderance of the

evidence presented at the hearing substantiated the charge, and

he found Petitioner guilty of violating Cal. Code Regs., tit. 15,

§ 3013. (Pet. 41.)[1] The evidence relied on included Sergeant

Duty's report, which stated that after Petitioner reported his

---

[1] The Court notes that at all pertinent times, Cal. Code Regs., tit. 15, § 3013 provided that inmates shall not attempt to gain special consideration or favor from other inmates, employees, institution visitors or any other person by the use of bribery, threat or other unlawful means.

inability to get along with Anglin and the need to move Anglin
because they could not be in the same cell, Officer Barraza told
Petitioner that due to a lock-down, no unnecessary bed moves
would be made, and Petitioner needed to wait until Saturday,
which was designated for "Convenience Moves."  (Id.)  Petitioner
replied that Barraza needed to move Anglin that day and that if
something happened, Petitioner would sue Barraza.  Petitioner was
rehoused to prevent a physical altercation.  Following his
relocation, Petitioner approached staff and said he was not
compatible with his new cellmate.  Sgt. Duty interviewed
Petitioner, who requested that the bed move be reversed because
Petitioner felt he was in a worse situation because his new
cellmate had a convenience move arranged, but Petitioner's move
into the cell prevented it from happening.  Sgt. Duty wrote:

> Rosenblum [claimed] the issue between him and
> his old cellmate was resolved and they could have
> waited to the weekend to do a convenience move.
> Rosenblum explained the only reason he said what he did
> to Officer Barraza was to expedite the cell move.
> Rosenblum has been involved in numerous Physical
> Altercations while housed on Facility-A.  It is
> apparent Rosenblum utilized his past behavior
> in an attempt to Manipulate Staff in moving his
> cellmate from 109 in Building Two and only when
> he was moved from the cell did he inform Staff
> the issue he had with his old cellmate was not
> serious and could have been addressed on the
> weekend.

(Pet. 41.)

The hearing officer also relied on the stipulated testimony
of Officer Barraza, who the hearing officer noted had personal
knowledge of the events in question.

Petitioner denies that he told Sgt. Duty that the only
reason he told Barraza what he did was to expedite the move.

(Pet. 46.) Further, Petitioner alleges that both the hearing officer and an Officer Garrison refused to allow Larrimore to be called as a witness. Petitioner asserts that Larrimore could have confirmed the complete incompatibility of Petitioner and Larrimore. (Pet. 46.)

Other than Petitioner's denial of having committed the disciplinary violation and his assertion that he made a request to have a witness that was not documented, there do not appear to be any disputed material facts with respect to the disciplinary proceedings or the evidence underlying the finding that Petitioner attempted to manipulate staff.

B.   Legal Standards

Because the petition was filed after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), the AEDPA applies to the petition. Lindh v. Murphy, 521 U.S. 320, 327 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997).

A district court may entertain a petition for a writ of habeas corpus by a person in custody pursuant to the judgment of a state court on the ground that the custody is in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. §§ 2254(a), 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 n.7 (2000).

Title 28 U.S.C. § 2254 provides in pertinent part:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

(e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption or correctness by clear and convincing evidence.

The Petitioner bears the burden of establishing that the decision of the state court was contrary to, or involved unreasonable application of, the precedents of the United States Supreme Court. <u>Lambert v. Blodgett</u>, 393 F.3d 943, 970 n.16 (9th Cir. 2004); <u>Baylor v.Estelle</u>, 94 F.3d 1321, 1325 (9th Cir. 1996).

Procedural due process of law requires that where the state has made good time subject to forfeiture only for serious misbehavior, then prisoners subject to a loss of good-time credits must be given advance written notice of the claimed violation, a right to call witnesses and present documentary evidence where it would not be unduly hazardous to institutional safety or correctional goals, and a written statement of the finder of fact as to the evidence relied upon and the reasons for disciplinary action taken. <u>Wolff v. McDonnell</u>, 418 U.S. 539, 563-64 (1974). Confrontation, cross-examination, and counsel are not required. <u>Wolff</u>, 418 U.S. at 568-70.

Further, where good-time credits are a protected liberty interest, the decision to revoke credits must be supported by some evidence in the record. <u>Superintendent v. Hill</u>, 472 U.S.

445, 454 (1985).  The Court in <u>Hill</u> stated:

> We hold that the requirements of due process are
> satisfied if some evidence supports the decision by the
> prison disciplinary board to revoke good time credits.
> This standard is met if "there was some evidence from
> which the conclusion of the administrative tribunal
> could be deduced...." <u>United States ex rel. Vajtauer v.
> Commissioner of Immigration</u>, 273 U.S., at 106, 47
> S.Ct., at 304. Ascertaining whether this standard is
> satisfied does not require examination of the entire
> record, independent assessment of the credibility of
> witnesses, or weighing of the evidence. Instead, the
> relevant question is whether there is any evidence in
> the record that could support the conclusion reached by
> the disciplinary board. See <u>ibid.; United States ex
> rel. Tisi v. Tod</u>, 264 U.S. 131, 133-134, 44 S.Ct. 260,
> 260-261, 68 L.Ed. 590 (1924); <u>Willis v. Ciccone</u>, 506
> F.2d 1011, 1018 (CA8 1974).

<u>Superintendent v. Hill</u>, 472 U.S. at 455-56.  The Constitution

does not require that the evidence logically preclude any

conclusion other than the conclusion reached by the disciplinary

board; rather, there need only be some evidence in order to

ensure that there was some basis in fact for the decision.

<u>Superintendent v. Hill</u>, 472 U.S. at 457.

Generally, a failure to meet a prison guideline regarding a

disciplinary hearing would not alone constitute a denial of due

process.  See, <u>Bostic v.Carlson</u>, 884 F.2d 1267, 1270 (9th Cir.

1989).  In the absence of controlling authority, several courts

have concluded that to establish a denial of due process of law,

prejudice is generally required.  See, <u>Brecht v. Abrahamson</u>, 507

U.S. 619, 637 (1993); <u>see also Tien v. Sisto</u>, Civ. No. 2:07-cv-

02436-VAP (HC), 2010 WL 1236308, at *4 (E.D.Cal. Mar. 26, 2010)

("While neither the United States Supreme Court or the Ninth

Circuit Court of Appeals has spoken on the issue, numerous

federal Courts of Appeals, as well as courts in this district,

have held that a prisoner must show prejudice to state a habeas

claim based on an alleged due process violation in a disciplinary proceeding.") (citing Pilgrim v. Luther, 571 F.3d 201, 206 (2d Cir. 2009); Howard v. United States Bureau of Prisons, 487 F.3d 808, 813 (10th Cir. 2007); Piggie v. Cotton, 342 F.3d 660, 666 (7th Cir. 2003); Elkin v. Fauver, 969 F.2d 48, 53 (3d Cir. 1992); Poon v. Carey, No. Civ. S-05-0801 JAM EFB P, 2008 WL 5381964, at *5 (E.D.Cal. Dec. 22, 2008); Gonzalez v. Clark, No. 1:07-CV-0220 AWI JMD HC, 2008 WL 4601495, at *4 (E.D.Cal. Oct. 15, 2008)).

C.   Analysis

Petitioner raises the following claims in the petition:  1) the preponderance of the evidence demonstrated Petitioner's innocence, and the adjudication was not supported by some evidence; and 2) prison officials (Officer Garrison and the hearing officer, Lt. Green) refused to document Petitioner's desire to call inmate Larrimore as a witness to his hearing and refused to allow Petitioner to call Larrimore as a witness. (Pet. 27, 31.)

1.   Some Evidence

With respect to the requirement that some evidence support the finding that Petitioner committed the attempt to manipulate staff, this Court does not make its own assessment of the credibility of witnesses or re-weigh the evidence.  However, the Court must ascertain that the evidence has some indicia of reliability and, even if meager, "not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary."  Cato v. Rushen, 824 F.2d 703, 704-05 (9th Cir. 1987) (quoting Superintendent v. Hill, 472 U.S. 445, 457 (1985)).

In <u>Cato v. Rushen</u>, 824 F.2d at 705, the Court found that the <u>Hill</u> standard was not satisfied where the only evidence implicating the inmate was another inmate's statement that was related to prison officials through a confidential informant who had no first-hand knowledge of any relevant statements or actions by the inmate being disciplined and whose polygraph results were inconclusive.  In contrast, evidence evaluated and found to constitute "some evidence" to support various findings includes the report of a prison guard who saw several inmates fleeing an area after an assault on another inmate when no other inmates were in the area, <u>Superintendent v. Hill</u>, 472 U.S. 456-57; the statement of a guard that the inmate had admitted a theft to supplement his income, coupled with corroborating evidence, <u>Bostic v. Carlson</u>, 884 F.2d 1267, 1270 (9th Cir. 1989); an inmate's admission and corroborating, circumstantial evidence, <u>Crane v. Evans</u>, 2009 WL 148273, *3 (N.D.Cal. Feb. 2, 2009); and an inmate's admission of having engaged in the violation plus an officer's report of having heard a recording of the offending conversation, <u>Dawson v. Norwood</u>, 2010 WL 761226, *1 (C.D.Cal. March 1, 2010).

Here, the decision of the hearing officer was supported by the stipulated testimony of Officer Barraza, who would have testified to Petitioner's assertion of the urgency of need to move away from Anglin.  It was further supported by Sgt. Duty's report that stated Petitioner had told him that the only reason he told Barraza that the move had to happen immediately was to expedite the move.  This evidence constitutes some evidence of manipulative intent and manipulation that has a basis in fact and

1  supports the hearing officer's conclusion.

2      Petitioner argues that Anglin's testimony showed that he and

3  Anglin were not working out their problems after the first move.

4  However, the later statement of Petitioner that Anglin and he had

5  worked out their problems sufficiently to share a cell again

6  undermines this interpretation of the evidence.  Further, the

7  fact that Petitioner may have at some point perceived some

8  urgency with respect to the cell move is undercut by the later

9  statement documented by Sgt. Duty concerning the reason for

10  Petitioner's statement to Officer Barraza.

11      In short, the fact that other conclusions are logically

12  possible if different portions of the evidence before the hearing

13  officer were credited does not demonstrate an absence of some

14  evidence to support the decision.  Petitioner's argument that a

15  preponderance of the evidence demonstrates his innocence misses

16  the mark because this Court reviews the record to determine only

17  if some evidence supports the decision.

18          2.  Witness Larrimore

19      Petitioner claims that he was denied his right to call as a

20  witness inmate Larrimore, to whose cell Petitioner was moved.

21  Petitioner argues that Larrimore would have given relevant

22  testimony to corroborate his complete incompatibility with

23  Petitioner.  Petitioner argues that this would disprove a theory

24  of manipulation.  (Pet. 28.)

25      There is an absence of any documentation that Petitioner

26  ever requested Larrimore as a witness.  Even assuming that at

27  some point a request to have Larrimore testify at the hearing was

28  refused, this would not support a finding of a prejudicial denial

11

of due process in the context of the present case. Petitioner argues that if Larrimore had testified that he and Petitioner were incompatible, it would have been established that Petitioner was acting out of necessity and not to manipulate. However, Sgt. Duty's report of Petitioner's statement to him reflected independent, antecedent manipulation on the part of Petitioner with respect to the move away from Anglin. The anticipated testimony of Larrimore would not have changed the calculus concerning the presence of "some evidence" to support the finding of a disciplinary violation. In this respect, Petitioner's allegations of deprivation of the right to present witnesses are unsupported by a statement of specific facts showing a violation that warrants habeas relief. See, James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994).

Petitioner has not shown any prejudicial denial of due process. Cf., Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (determining that habeas relief is warranted when an error resulted in actual prejudice, or had a substantial and injurious effect or influence in determining the jury's verdict); Schenck v. Edwards, 921 F.Supp. 679, 687-88 (E.D.Wash. 1996). Petitioner's claim concerning alleged deprivation of the testimony of a witness does not constitute a basis for habeas relief.

In sum, Petitioner has not alleged specific facts that point to a real possibility of constitutional error. Even if Petitioner's allegations are accepted, Petitioner has not shown that he was denied due process of law by an absence of some reliable evidence to support the disciplinary finding or by the

1  absence of a witness from the hearing.

2      A petition for habeas corpus should not be dismissed without
3  leave to amend unless it appears that no tenable claim for relief
4  can be pleaded were such leave granted.  <u>Jarvis v. Nelson</u>, 440
5  F.2d 13, 14 (9th Cir. 1971).  Petitioner has submitted with his
6  petition apparently complete documentation of the disciplinary
7  proceedings that are the subject of his due process claims.  The
8  record of the state proceedings reflects that the disciplinary
9  finding was supported by some evidence, and there was no
10 prejudicial denial of a witness.  Thus, it is not logically
11 possible that Petitioner could allege a tenable due process claim
12 concerning the disciplinary proceedings.

13     Accordingly, it will be recommended that the petition be
14 dismissed without leave to amend.

15     III.  <u>Certificate of Appealability</u>

16     Unless a circuit justice or judge issues a certificate of
17 appealability, an appeal may not be taken to the court of appeals
18 from the final order in a habeas proceeding in which the
19 detention complained of arises out of process issued by a state
20 court.  28 U.S.C. § 2253(c)(1)(A); <u>Miller-El v. Cockrell</u>, 537
21 U.S. 322, 336 (2003).  A certificate of appealability may issue
22 only if the applicant makes a substantial showing of the denial
23 of a constitutional right.  § 2253(c)(2).  Under this standard, a
24 petitioner must show that reasonable jurists could debate whether
25 the petition should have been resolved in a different manner or
26 that the issues presented were adequate to deserve encouragement
27 to proceed further.  <u>Miller-El v. Cockrell</u>, 537 U.S. at 336
28 (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)).  A

certificate should issue if the Petitioner shows that jurists of
reason would find it debatable whether the petition states a
valid claim of the denial of a constitutional right and that
jurists of reason would find it debatable whether the district
court was correct in any procedural ruling.  Slack v. McDaniel,
529 U.S. 473, 483-84 (2000).

In determining this issue, a court conducts an overview of
the claims in the habeas petition, generally assesses their
merits, and determines whether the resolution was debatable among
jurists of reason or wrong.  Id.  It is necessary for an
applicant to show more than an absence of frivolity or the
existence of mere good faith; however, it is not necessary for an
applicant to show that the appeal will succeed.  Miller-El v.
Cockrell, 537 U.S. at 338.

A district court must issue or deny a certificate of
appealability when it enters a final order adverse to the
applicant.  Rule 11(a) of the Rules Governing Section 2254 Cases.
It does not appear that reasonable jurists could debate whether
the petition should have been resolved in a different manner.
Petitioner has not made a substantial showing of the denial of a
constitutional right.

Accordingly, it will be recommended that the Court decline
to issue a certificate of appealability.

IV.  Recommendations

Accordingly, it is RECOMMENDED that:

1)  The petition for writ of habeas corpus be DISMISSED
without leave to amend; and

2)  The Court DECLINE to issue a certificate of

14

appealability; and

3)  The Clerk be DIRECTED to close the case because an order of dismissal would terminate the action in its entirety.

These findings and recommendations are submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within thirty (30) days after being served with a copy, any party may file written objections with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Replies to the objections shall be served and filed within fourteen (14) days (plus three (3) days if served by mail) after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:    June 30, 2011                        /s/ Sheila K. Oberto
                                        UNITED STATES MAGISTRATE JUDGE